UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPASSKY ALCEQUIECZ, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * Civil Action No. 1:14-cv-11693-ADB |
| | * |
| KELLY RYAN, | * |
| | * |
| Respondent. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Petitioner Spassky Alcequiecz was convicted of murder in the first degree on a theory of felony-murder pursuant to Mass. Gen. Laws ch. 265, § 1, armed burglary pursuant to Mass. Gen. Laws ch. 266, § 14, and assault and battery by means of a dangerous weapon pursuant to Mass. Gen. Laws ch. 265, § 15A(b).[1] Presently pending before this Court is Alcequiecz's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. [ECF No. 1]. Having reviewed the parties' submissions, and construing Alcequiecz's pleadings liberally because he is proceeding *pro se*, this Court DENIES his petition for a writ of habeas corpus for the reasons set forth below.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Massachusetts Supreme Judicial Court ("SJC") provided an account of the facts as the jury could have found them, which is summarized in relevant part below. See

---

[1] Armed burglary was the predicate felony for felony-murder, which is an offense punishable by life imprisonment. See Mass. Gen. Laws ch. 265, § 1. The Massachusetts Supreme Judicial Court determined that "[t]he jury did not find the [Petitioner] guilty of murder in the first degree on the theories of deliberate premeditation or extreme atrocity or cruelty" but on the theory of felony-murder, and set aside the conviction for armed robbery as duplicative of the felony-murder conviction. Commonwealth v. Alcequiecz, 989 N.E.2d 473, 476 n.2 (Mass. 2013).

Commonwealth v. Alcequiecz, 989 N.E.2d 473, 476–79 (Mass. 2013).[2]

Petitioner began dating Amanda Poisson in 2001. By early 2007, they, along with their three-year-old son, Poisson's nine-year-old daughter, and a family friend of Poisson's, were living in a house in Lynn, Massachusetts. The house was being renovated in March of 2007, during which time Petitioner, Poisson, and the two minor children stayed elsewhere. During this time, Poisson decided to end her relationship with Petitioner, so Petitioner moved to an apartment in another city. Poisson and the children moved back to the house in Lynn after the renovations were completed, and around this same time, Poisson began dating Carlos Mejia.

Although their relationship had ended, Petitioner and Poisson stayed in frequent contact. They also continued to share vehicles, which they exchanged approximately every other day. In April of 2007, Petitioner met Mejia for the first time at a birthday party for Poisson's daughter. Poisson did not tell Petitioner that she and Mejia were dating. One week later, Poisson engaged in sexual intercourse with Petitioner at his apartment where she then spent the night. The following morning, Poisson informed Petitioner that she did not want to rekindle their relationship despite the events of the prior evening.

Thereafter, on April 19, 2007, Petitioner spent the evening drinking and using cocaine with friends. At the same time, Mejia was visiting Poisson at her house in Lynn. At approximately 3:18 a.m. on April 20, 2007, Petitioner called Poisson and asked if he could spend the night at her house. After being told to go home, Petitioner responded that "the only reason why [she] wouldn't let him in the house is if somebody was there." Poisson told Petitioner to go

---

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, Petitioner does not argue that the facts relied upon by the SJC were erroneous.

2

home a second time and hung up the phone. Petitioner called back, and Poisson again told him to go home. Petitioner responded, "Did you forget that I have the keys to the house?"[3] and hung up. Id.

Poisson went downstairs, looked out the living room window, and saw Petitioner's vehicle parked outside. Petitioner was standing on the front porch. He then unlocked the front door, but the door's chain lock prevented him from entering the house. When Poisson declined to join Petitioner outside to talk, he asked if anyone was inside with Poisson, and said that he would leave if that were the case. Poisson then told Petitioner that Mejia was inside watching a movie.

Upon learning this information, Petitioner smashed several window panes above the front door with a car battery charger pack that had been on the front porch. When Petitioner threatened to break down the door, Poisson let him into the house. Petitioner then used the car battery charger pack to strike Poisson in the head twice. When he tried to hit Poisson a third time, she blocked the attempted blow with her arms.

Petitioner then went upstairs to Poisson's bedroom where he found Mejia, and told him, "This is what I wanted to see. I wanted to see you here in my house, in my bedroom." Id. Carol DeChristoforo, a family friend who was renting a room in the house, heard the commotion and called 911. Petitioner left the house for a moment before returning to take his son, who he then locked in a vehicle parked in the driveway.[4] While Petitioner was out of the house with his son, Poisson joined her daughter, Mejia, and DeChristoforo in DeChristoforo's bedroom on the second floor of the house. She was dizzy and bleeding from her head, and told DeChristoforo

---

[3] The key rings to the vehicles that Poisson and Petitioner shared each had a key to Poisson's house.

[4] The vehicle was one of the two cars that Poisson and Petitioner shared. The SJC reasoned that although Poisson had been using the vehicle at the time, the jury could have inferred that Petitioner was familiar with her practice of hanging the car keys on a hook in the kitchen from when he lived with Poisson in the same house.

3

that she needed an ambulance. DeChristoforo placed a second call to 911.

Petitioner then returned to the house, went upstairs holding a thirteen-inch kitchen knife, and attempted to force his way into DeChristoforo's bedroom while Mejia tried to use his body to hold the bedroom door closed.[5] Poisson hid in the closet in DeChristoforo's bedroom. Petitioner managed to force the door open enough to reach in with his right arm and swing the knife at Mejia as Mejia continued to try to hold the door closed. Eventually, Petitioner was able to push his upper body through the partially open door. Petitioner then looked at Mejia, swung the knife one last time, and pulled his arm out. Mejia, covered in blood, slid down the wall onto the floor.

As Petitioner descended the stairs, he shouted, "Yeah, I did it. Yeah, I did it." As two officers entered the house, they encountered Petitioner, who was still holding the knife. The officers ordered Petitioner to put down the knife and he tossed it onto the couch. After Poisson attempted to assist an officer who was attending to Mejia's wounds, she went downstairs and saw Petitioner in handcuffs. Poisson told Petitioner that he had probably killed Mejia and Petitioner replied, "You cheated on me. You're a whore." On the way to the police station, Petitioner asked one of the officers, "What would you do if you found your girl with someone else in your home?" Petitioner then answered his own question, saying he would do "whatever it took," even if it put him away for "the longest time." Petitioner also said that he "just cut him once a little bit."

Mejia suffered four stab wounds and died from blood loss after being transported to the hospital. Poisson suffered a laceration to the left side of her head that required seventeen staples as a result of being struck twice by the car battery charger pack.

---

[5] At some point before the Petitioner came upstairs, DeChristoforo heard him in the hallway saying, "If I had a fucking gun, I'd kill you all."

On May 30, 2007, Petitioner was indicted by a grand jury for murder in the first degree, armed robbery, and assault and battery with a dangerous weapon. Following a trial by jury, Petitioner was found guilty of all three counts. The trial judge sentenced Petitioner to life in prison for first-degree murder and to a concurrent term of nine to ten years for assault and battery by means of a dangerous weapon. [ECF No. 33 at 7]. The Petitioner filed a motion for a new trial on August 11, 2010, which was denied by the trial judge following a hearing. Id. at 9–10. The direct appeal of his convictions and his motion for a new trial were consolidated before the SJC, where Petitioner presented three claims: (1) that counsel was constitutionally ineffective on numerous grounds; (2) that the Commonwealth made an improper closing argument; and (3) that the conviction for armed burglary was duplicative of the predicate felony underlying his conviction for felony-murder. Alcequiecz, 989 N.E.2d at 476. The SJC affirmed the convictions for first-degree murder and assault and battery by means of a dangerous weapon, and dismissed the conviction of armed burglary as duplicative. Id. at 482–83.

On April 7, 2014, Petitioner filed a petition for federal habeas corpus review of his state court conviction, raising four claims [ECF No. 1], and requesting that the case be stayed pending the exhaustion of his state court remedies [ECF No. 2]. This Court granted a stay on June 9, 2014, at which time Petitioner filed a second motion for a new trial in state court, claiming that his convictions should be vacated because there was newly discovered evidence and his trial counsel had been ineffective for failing to investigate this evidence. [ECF No. 7]. The state court denied his motion for a new trial, and his petition for leave to appeal was denied by a single justice of the SJC because Petitioner did not present a "new and substantial question which ought to be determined by the full court." S.A. at 201.[6] At that time, Petitioner moved to lift the stay in

---

[6] Respondent's Supplemental Answer, which was filed manually on January 15, 2016, will be referred to as "S.A."

5

federal court [ECF No. 20], and filed a memorandum of law in support of his petition for federal habeas corpus review [ECF No. 21]. The stay was lifted on August 6, 2015. [ECF No. 22]. Thereafter, this Court ordered Petitioner to file an amended petition [ECF No. 27], which he did on December 14, 2015, [ECF No. 30]. Respondent filed an answer on January 15, 2016. [ECF No. 32]. Petitioner filed a memorandum of law in support of his amended petition on April 11, 2016 [ECF No. 36], and Respondent filed a memorandum of law in opposition on August 31, 2016 [ECF No. 40].

## II. LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA permits a federal court to grant habeas relief after a final state adjudication of a federal constitutional claim only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if: (1) the state court reaches a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different conclusion. Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state court decision is considered an "unreasonable application" of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 413. An unreasonable application requires "some

6

increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)). It requires that the petitioner show that the state court decision applied clearly established law in a way that was "objectively unreasonable." Sanchez v. Roden, 753 F.3d 279, 299 (1st Cir. 2014). Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

In his amended petition, Alcequiecz presents three grounds for federal habeas relief: (1) that the SJC's rejection of his ineffective assistance of counsel claim was an unreasonable application of federal law; (2) that there was insufficient evidence to convict him of felony-murder and armed burglary; and (3) that his trial counsel was constitutionally ineffective because he failed to properly investigate the case and call critical witnesses to support Petitioner's defense.

### A. Ground One: Unreasonable Application of Strickland

In his first ground for relief, Petitioner claims that the SJC unreasonably applied clearly established Supreme Court precedent in finding that his counsel was not constitutionally ineffective for failing to request jury instructions on provocation for felony-murder. The Supreme Court set forth the standard for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, trial counsel is ineffective such that his performance violates a client's Sixth Amendment right to counsel if (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "deficiencies in counsel's

7

performance [were] prejudicial to the defense." Strickland, 466 U.S. at 688, 692. Even if a lawyer's performance is constitutionally unacceptable, relief must be withheld unless the petitioner also demonstrates prejudice, meaning that "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard is broadly deferential to the strategic and tactical decisions of trial counsel, making them "virtually unchallengeable." Id. at 689–90. Further, "where the petitioner's claim was adjudicated on the merits by the state court . . . petitioner must also satisfy the AEDPA standard. Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009). Thus, "to establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy burden" because the petitioner must contend with both the deferential Strickland standard and the deferential standard required by § 2254. Id.

In this case, the SJC's application of Strickland to Petitioner's ineffective assistance of counsel claim was not objectively unreasonable. Massachusetts courts apply the "substantial miscarriage of justice" standard to ineffective assistance claims, which is "more favorable to the defendant than the constitutional standard articulated in Strickland." Kirwan v. Spencer, 631 F.3d 582, 590 n.3 (1st Cir. 2011); Commonwealth v. Wright, 584 N.E.2d 621, 624 (Mass. 1992). Here, after a careful examination of the jury instructions for all charges, the SJC reasonably determined that Petitioner's trial counsel was not constitutionally ineffective in failing to request an instruction on provocation because it is well-established in Massachusetts that "[e]vidence of provocation . . . is not a proper basis on which to reduce a conviction of felony-murder." Alcequiecz, 989 N.E.2d at 480 (quoting Commonwealth v. Rolon, 784 N.E.2d 1092 (Mass.

8

2003)). This is so because "provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion" is viewed as negating malice, reducing the killing from murder to manslaughter. Commonwealth v. Vinton, 733 N.E.2d 55, 63 (Mass. 2000) (internal quotations and citation omitted). For felony-murder, however, "the intent to commit the predicate felony substitutes for malice." Rolon, 784 N.E.2d at 1105. Thus, evidence of provocation in felony-murder "would not in any sense detract from evidence that the defendant committed the predicate felony," id., and is therefore "not germane to felony-murder." Commonwealth v. Smith, 946 N.E.2d 95, 109 (Mass. 2011). Here, the SJC reasonably determined that Petitioner's trial counsel, under the prevailing professional norms, was not constitutionally deficient in failing to request a provocation instruction for felony-murder because the well-established state law on the issue did not provide for provocation instructions under the circumstances. See Wiggins v. Smith, 539 U.S. 510, 521 ("the proper measure of attorney performance remains simply reasonableness under prevailing professional norms"); see also Hensley v. Roden, 755 F.3d 724, 737 (1st Cir. 2014) ("To prevail under Strickland, counsel's choice must have been 'so patently unreasonable that no competent attorney would have made it.'" (quoting United States v. Rodriquez, 675 F.3d 48, 56 (1st Cir. 2012))). Thus, it was not unreasonable for the SJC to have determined that it was not ineffective assistance of counsel when a competent attorney failed to request instructions that did not apply.[7]

Even assuming Petitioner had shown that the SJC was unreasonable in determining that his counsel was not deficient, he has not proven that he was prejudiced by his attorney's decision

---

[7] A federal habeas court defers to a state court's interpretation of state law. See, e.g., Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"); Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("it is not the province of a federal habeas court to examine state-court determinations on state-law questions").

not to request a provocation instruction. Petitioner has not presented any indication that requesting the desired instruction would have affected the outcome of his trial because even if trial counsel had requested the provocation instruction, the trial judge would not have been required to give it. Further, the trial judge did instruct the jury on provocation for the alternative theories of murder in the first degree by extreme cruelty or atrocity or by premeditation and of murder in the second degree. Alcequiecz, 989 N.E.2d at 479 n.9. With the instruction for provocation already explained to the jury, it is not likely that the jury would have changed its verdict even if it had received an additional provocation instruction for the theory of felony-murder. See Wright v. Marshall, 656 F.3d 102, 111 (1st Cir. 2011) (rejecting ineffective assistance claim and noting that "[j]ury instructions must be viewed as a whole, not as individual provisions in isolation.") (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)). Under the doubly deferential standard for ineffective assistance claims required by the AEDPA, this Court finds that the SJC's decision did not involve an unreasonable application of Strickland.

### B. Ground Two: Insufficient Evidence

Petitioner next contends that there was insufficient evidence to convict him of felony-murder and the predicate offense of armed burglary because he had a lawful right to enter the house. Respondent avers that Petitioner is not entitled to habeas relief on this ground because the claim was procedurally defaulted in state court.

"[T]he fact that a claim is procedurally defaulted in state court is an adequate and independent state ground precluding federal habeas relief." Hodge v. Mendonsa, 739 F.3d 34, 43 (1st Cir. 2013) (quoting Walker v. Russo, 506 F.3d 19, 21 (1st Cir. 2007)). "Grounded in comity and federalism, the procedural default rule bars § 2254 habeas relief 'when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural

requirement.'" Powell v. Tompkins, 783 F.3d 332, 344 (1st Cir. 2015), cert. denied, 136 S. Ct. 1448 (2016) (quoting Coleman v. Thompson, 501 U.S. 722, 729–30). "To be considered an adequate ground to bar habeas review, the state procedural rule that is the basis for a procedural default ruling must be regularly and consistently enforced by the state courts." Pina v. Maloney, 565 F.3d 48, 53 (1st Cir. 2009) (internal quotation marks omitted). A cognizable procedural default bars an inquiry into the merits of the claim unless a petitioner demonstrates cause and prejudice, or makes a rare showing of a miscarriage of justice. Wainwright v. Sykes, 433 U.S. 72, 86–87, 91 (1977).

In this case, Petitioner attempted to raise the insufficient evidence claim in his second motion for a new trial in the state Superior Court, but the claim was procedurally defaulted because he failed to advance it until it was too late. Mass. Gen. Laws ch. 278, § 33E "requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal." Costa v. Hall, 673 F.3d 16, 23 (1st Cir. 2012). "Under Massachusetts law, a claim is not new within the meaning of § 33E where it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review." Id. (internal quotations and citation omitted). Despite the fact that Petitioner did not raise the insufficient evidence claim in his direct appeal and it was therefore procedurally defaulted, the SJC nevertheless addressed the sufficiency of the evidence pursuant to the court's statutory duty under Mass. Gen. Laws ch. 278, § 33E, which requires the court to consider "any . . . reason that justice may require" for setting aside the verdict. The SJC determined that the evidence was sufficient to support the armed burglary conviction. Alcequiecz, 989 N.E.2d at 480 n.12. Under state law, once the Petitioner's appeal has been decided, a Superior Court decision denying a

subsequent motion for a new trial is not appealable "unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." Mass. Gen. Laws ch. 278, § 33E. Here, a single Justice of the SJC denied Petitioner leave to appeal, because he had not presented "a new and substantial question which ought to be determined by the full court." S.A. at 255. "A Single Justice's finding that a petitioner has not raised a 'new-and-substantial' question for further review constitutes a finding of procedural default under state law" and is an "independent and adequate state ground" precluding habeas relief. Costa, 673 F.3d at 23 (quoting Mendes v. Brady, 656 F.3d 126, 129, 131 (1st Cir. 2011)). Accordingly, the insufficient evidence claim was procedurally defaulted under state law, precluding habeas review on the merits.

"In order to escape from the preclusive effect of his procedural default, [Petitioner] is obligated to show both cause for, and prejudice from, his noncompliance with the Commonwealth's . . . rule." Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994) (alteration omitted). The existence of cause for a procedural default ordinarily turns on whether the petitioner can show that an "objective factor external to the defense" impeded his ability to comply with the rules. Murray v. Carrier, 477 U.S. 478, 479 (1986). Although ineffective assistance of counsel can constitute cause, counsel's simple failure to recognize a claim or procedural rule cannot. Id. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim . . . does not constitute cause for a procedural default."). In addition to cause, Petitioner must show prejudice. See Ortiz, 19 F.3d at 714 (1st Cir. 1994). "To scale this wall, a petitioner must demonstrate 'not merely that the errors [ ] . . . created possibility of prejudice, but that they worked to his actual and substantial disadvantage.'" Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Lastly, Petitioner can avoid his procedural default by

showing that a substantial miscarriage of justice has occurred. Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995). Miscarriage of justice "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." Id.

Here, Petitioner has not attempted to show cause for or prejudice arising from his procedural default, and has not attempted to assert a claim of actual innocence. Further, there is nothing in the record that shows that some "objective factor external to the defense" impeded Petitioner's ability to comply with the rule in this case.[8] Petitioner also cannot demonstrate that the procedural default worked to his actual and substantial disadvantage because the SJC addressed the argument on direct appeal, despite it not being raised. See Alcequiecz, 989 N.E.2d at 481 n.12. Accordingly, Petitioner cannot demonstrate cause for or prejudice from his procedural default, or actual innocence, which would excuse his procedural default here.[9] To the extent that his claims regarding the sufficiency of the evidence relate to his arguments regarding "new evidence" and ineffective assistance of counsel, the Court will address the claim below.

---

[8] It does not appear that Petitioner has argued or attempted to show an ineffective assistance claim to excuse his procedural default on this ground, however, to the extent that his *pro se* petition can be liberally construed to present this argument, it is unavailing. Although ineffective assistance can constitute cause, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986).
[9] To the extent that Petitioner is arguing an unreasonable application of Jackson v. Virginia, 443 U.S. 307 (1979), which governs insufficient evidence claims, the argument is unavailing. The SJC considered the issue of its own accord pursuant to Mass. Gen. Laws ch. 276, § 33E and determined that "the jury reasonably could have found that Petitioner committed an armed burglary by breaking and entering the dwelling of another in the night time with the intent to commit a felony therein . . . that [the victim] was lawfully inside the dwelling, and that the defendant was armed with a dangerous weapon at the time of breaking and entering." Alcequiecz, 989 N.E.2d at 481 n.12. It was not objectively unreasonable to find that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt given the overwhelming evidence supporting each element of the crimes for which he was convicted. See Jackson, 443 U.S. at 319 (relevant test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

### C. Ground Three: Ineffective Assistance of Counsel for Failing to Investigate and Call Particular Witnesses

Petitioner also asserts that he was denied his constitutional right to effective assistance of counsel because trial counsel did not call Poisson's parents to the stand to establish that Petitioner was a lawful occupant of the dwelling when he entered and stabbed Meija.[10] Respondent asserts that this claim is also procedurally defaulted.

Respondent is correct that there is an independent and adequate state ground precluding habeas relief because, like the claim discussed above, Petitioner did not present a "new and substantial question" to the SJC. See Costa, 673 F.3d at 24. Thus, the merits of Petitioner's claim can only be considered if he can show cause for and prejudice from the procedural default. Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006).

In this instance, to show cause, Petitioner would need to demonstrate that some "objective factor external to the defense" prevented the Petitioner or his counsel from raising this argument in the first appeal to the SJC or in the first motion for a new trial. See Murray, 477 U.S. at 488. Petitioner contends that the external factor that resulted in procedural default is that the evidence, in the form of an affidavit from Poisson's parents that affirms he was paying rent to them, was newly discovered. The trial judge, however, determined that "the 'newly discovered evidence' is not newly discovered at all" and that "the [Petitioner] concedes that it was known to him and trial counsel at the time of trial." S.A. at 208. Not only is the evidence not new, it merely reiterates the arguments already raised at trial regarding Petitioner's lawful right to enter the house, which the jury rejected. Any additional evidence would have been cumulative, as Petitioner concedes that the "entire trial strategy [was] that the petitioner had a lawful and

---

[10] Petitioner contends that counsel told Petitioner that he would call Poisson's parents as witnesses at trial, but that he failed to hire a private investigator to locate them. [ECF No. 36 at 56–57].

14

rightful occupancy" in the dwelling. [ECF No. 36 at 51]. Accordingly, he has failed to demonstrate cause here.

Further, "[b]ecause [Petitioner] has procedurally defaulted his ineffective assistance of counsel claims in state court, he cannot simply rely on what is at the heart of the merits of those claims, the alleged ineffectiveness, to show cause for procedural default of the same claims." Costa, 673 F.3d at 25. "Federal habeas courts do not exempt ineffective assistance of counsel claims from the general rule requiring cause and prejudice for procedural default, because to do so would render the exhaustion requirement 'illusory.'" Id. This is true when a petitioner seeks to "excuse the procedural default of his ineffective assistance of counsel claim by pointing merely to another layer of ineffectiveness." Id. Further, Petitioner's claim would fail because trial counsel made a strategic choice not to call Poisson's parents as witnesses. Especially because Poisson was a victim of the crimes at issue, trial counsel had to carefully weigh the potential benefit of the parents' testimony, which would have been duplicative of other evidence offered by Petitioner, against potential disadvantages, including making Poisson's parents available for cross-examination. See Horton v. Allen, 370 F.3d 75, 86 (1st Cir. 2004) ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." (quoting Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993))). Thus, with respect to ground three, the Court is barred from granting habeas relief on independent and adequate state law grounds.

### D. Additional Claims

Petitioner appears to raise two new claims in his memorandum of law in support of the amended petition. He contends that his counsel was constitutionally ineffective because counsel (1) failed to argue that the underlying felony, armed burglary, was not connected to the murder

because it had finished minutes before the murder; and (2) failed to request a jury instruction explaining what murder "in connection with" a felony meant. Respondent avers that these two arguments are waived because Petitioner did not present them in the original petition for habeas corpus.

Rule 2(c) of the Rules Governing Habeas Corpus Cases require a petition to: "(1) specify all the grounds for relief available to the petitioner; (2) "state the facts supporting each ground; [and] (3) state the relief requested." Sullivan v. Saba, No. 10-CV-30194-MAP, 2012 WL 1409530, at *2 (D. Mass. Apr. 20, 2012). "It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claim for habeas relief." Smiley v. Maloney, No.01-11648-GAO, 2003 WL 23327540, at *16 n.39 (D. Mass. Oct. 31, 2003), aff'd, 422 F.3d 17 (1st Cir. 2005).

Here, Petitioner presented only three claims for habeas relief in his petition to the Court, each of which has been addressed above.[11] Accordingly, Respondent is correct that Petitioner's two additional claims have been waived, thereby precluding the Court from granting relief on those grounds. See, e.g., McGee v. Medeiros, No. 15-11498-LTS, 2016 WL 837930, at *5 n.3 (D. Mass. Mar. 2, 2016) (finding that failure to raise claim in petition precluded court from granting relief on that basis); Fencher v. Roden, No. CIV.A. 13-11937-RGS, 2015 WL 4111329, at *8 (D. Mass. July 8, 2015) report and recommendation adopted, No. CIV.A. 13-11937-RGS, 2015 WL 4111329, at *1 (D. Mass. July 8, 2015) (Petitioner's new grounds for relief were barred because they were not included in the original petition but were presented for the first time in the accompanying memorandum of law); Sullivan, 2012 WL 1409530, at *2 (same).

---

[11] The Court refers to Petitioner's amended petition. [ECF No. 30]. The original petition for habeas included four grounds for relief, but the fourth ground is not one of the two new claims raised for the first time in his subsequent memorandum of law. [ECF Nos. 1, 30, 36].

16

Even assuming that Petitioner's ineffectiveness claims were not waived, he would nonetheless fail to satisfy the doubly deferential standard required under Strickland and the AEDPA. Yeboah-Sefah, 556 F.3d at 70. In Massachusetts, a killing constitutes felony-murder if it occurs "in the commission or attempted commission of a [predicate felony]." Mass. Gen. Laws ch. 265, § 1. The SJC has consistently held that this means that the killing must occur "in connection with the felony and at substantially the same time and place." Rolon, 784 N.E. 2d at 1102 n.11 (quoting Model Jury Instructions on Homicide 16, 17–18 (1999)). Here, the SJC noted that Petitioner stabbed Meija only minutes after breaking into the house, and that the entire span of events took place in less than nine minutes. Alcequiecz, 989 N.E.2d at 481. It then reasonably determined that, because there was ample evidence that Petitioner killed Meija in the commission of the armed burglary and that these events were "a single transaction consisting of an unbroken sequence of events," counsel was not ineffective in failing to make an argument that had a "minimal chance of success." Id. The SJC's determination that trial counsel was not constitutionally ineffective was not objectively unreasonable in this case. See, e.g., Robidoux v. O'Brien, 643 F.3d 334, 344 (1st Cir. 2011) (finding no ineffective assistance for failing to argue defenses due to a lack of possible success); Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) ("Trial counsel [is] under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel.").

For the same reason, Petitioner is not entitled to relief on the claim that his counsel should have sought additional instructions as to what murder "in connection with" a felony entailed. In this case, the SJC carefully examined the trial judge's instructions for the felony-murder charge, which aligned with the Model Jury Instructions on Homicide 15–17 (1999). Alcequiecz, 989 N.E.2d at 482. It was not objectively unreasonable for the SJC to find that

17

"[b]ecause there was no error in the judge's instructions, trial counsel's failure to . . . request clarifying instructions could not have been ineffective." Id. Again, declining to pursue arguments with a minimal chance of success does not amount to ineffective assistance of counsel. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (failing to pursue a futile tactic does not result in deficient performance). Thus, Petitioner's two arguments were waived, but even assuming that the arguments were not waived, he has failed to show that the SJC's application of Strickland was objectively unreasonable.

**IV. CONCLUSION**

Accordingly, the Court DENIES Alcequiecz's amended petition for a writ of habeas corpus. [ECF No. 30]. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing § 2254 Cases, R. 11(a). Because Alcequiecz has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability here.

**SO ORDERED.**

May 30, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE